1

2

3            **UNITED STATES DISTRICT COURT**

4                    **DISTRICT OF NEVADA**

5

6    UNITED STATES OF AMERICA                    Case No. 2:23-cr-00012-NJK
              Plaintiff,
7                                                          **Order**
     v.
8                                                   [Docket No. 12]
     DEVAL HATCHER,
9
              Defendant.
10

11        Pending before the Court is Defendant's motion to dismiss for violation of nondelegation

12   doctrine.  Docket No. 12.  The United States filed a response,  Docket No. 8, and Defendant filed

13   a reply, Docket No. 14.  The motion is properly resolved without a hearing.  *See* Local Rule 78-1.

14   For the reasons more fully discussed below, Defendant's motion is **DENIED**.

15   **I.      BACKGROUND**

16        Defendant is charged with operating a vehicle in excess of the posted speed limit in Red

17   Rock National Conservation Area on September 2, 2022, all in violation of 43 C.F.R. § 83651.1-

18   3(a).[1] [2]  Docket No. 1 at 1.  43 C.F.R. § 83651.1-3(a) was promulgated by the Secretary of the

19   Interior pursuant to authority delegated to her under 43 U.S.C. § 1733(a).[3]

20

21   _____

[1]      Defendant was originally charged with resisting issuance of a citation in violation of 43
22   C.F.R. § 8365.1-4(a)(4) and exceeding posted speed in violation of 43 C.F.R. § 83651.1-3(a).
     Docket No. 7 at 2.  The United States dismissed the charge of resisting issuance of a citation.  *See*
23   Docket No. 4-1.  The criminal information in this case only charges Defendant with violating 43
     C.F.R. § 83651.1-3(a).  *See* Docket No. 1.

24   [2]      43 C.F.R. § 83651.1-3(a) provides that "[w]hen operating a vehicle on the public lands, no
25   person shall exceed posted speed limits, willfully endanger persons or property, or act in a reckless,
     careless or negligent manner."

26   [3]      43 U.S.C. § 1733 provides, in part, that "[t]he Secretary shall issue regulations necessary
     to implement the provisions of this Act with respect to the management, use, and protection of the
27   public lands, including the property located thereon. Any person who knowingly and willfully
     violates any such regulation which is lawfully issued pursuant to this Act shall be fined no more
28   than $1,000 or imprisoned no more than twelve months, or both."

1    Defendant submits that the citation against him should be dismissed because only Congress

2  can make acts criminal.  Docket No. 12 at 2.  Defendant further submits the regulation under which

3  he is charged was "promulgated by the executive branch instead of the legislative branch pursuant

4  to an unlawfully broad and limitless delegation of power," and is therefore unconstitutional.  *Id.*

5  The United States responds that "the delegation of authority by Congress to the Secretary of the

6  Interior pursuant to 43 U.S.C. § 1733 does not run afoul of the non-delegation doctrine."  Docket

7  No. 8 at 3.

8  **II.    STANDARDS**

9    The Constitution of the United States vests the power to legislate in Congress.  U.S. Const.

10  art. 1, § 1.  Under this constitutional structure, "Congress generally cannot delegate its legislative

11  power to another Branch."  *Mistretta v. United States*, 488 U.S. 361, 372 (1989).  This restriction

12  is commonly known as the nondelegation doctrine.  "Under modern precedent, this is an

13  exceedingly modest limitation."  *United States v. Melgar-Diaz*, 2 F.4th 1263, 1266 (9th Cir. 2021).

14  Supreme Court precedent recognizes that "the Constitution does not deny to the Congress the

15  necessary resources of flexibility and practicality" such that "Congress may obtain the assistance

16  of its coordinate Branches – and in particular, may confer substantial discretion on executive

17  agencies to implement and enforce the laws."  *Gundy v. United States*, 139 S. Ct. 2116, 2123

18  (2019) (internal quotations and citations omitted).  "So long as Congress lays down by legislative

19  act an intelligible principle to which the person or body authorized to act is directed to conform,

20  such legislative action is not a forbidden delegation of power."  *Touby v. United States*, 500 U.S.

21  160, 165 (1991) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)).

22  "This means that a delegation is permissible if Congress has made clear to the delegee the 'general

23  policy' he must pursue and the 'boundaries of his authority.'"  *Melgar-Diaz*, 2 F.4th at 1267

24  (quoting *Gundy*, 139 S. Ct. at 2129).  Determining whether Congress provided an intelligible

25  principle "requires construing the challenged statute to figure out what task it delegates and what

26  instructions it provides."  *Gundy*, 139 S. Ct. at 2123 (citing *Whitman v. Am. Trucking Ass'ns, Inc.*,

27  531 U.S 457, 473 (2001)).

28

1 **III.    DISCUSSION**

2     Defendant submits that 43 U.S.C. § 1733(a) lacks an intelligible principle to guide the

3 Secretary in promulgating regulations.[4]  Docket No. 12 at 2-3.  The United States cites *United*

4 *States v. Kittel*, 2021 WL 3823185 (D. Or. 2021), for the proposition that courts in the Ninth Circuit

5 have found a statute similar to 43 U.S.C. § 1733(a) to contain an intelligible principle, Docket No.

6 8 at 5.  The *Kittel* court reached its conclusion by adopting the reasoning in *United States v.*

7 *Cassiagnol*, 420 F.2d 868, 876-77 (4th Cir. 1970).  *Kittel*, 2021 WL 3823185 at *4-*5.  The United

8 States also adopts the reasoning of *Cassiagnol* in its brief.  Docket No. 8 at 5-6.

9     *Cassiagnol* involved antiwar protestors at the Pentagon challenging their convictions for

10 violating various General Service Administration ("GSA") regulations promulgated under 40

11 U.S.C. § 318.  420 F.2d at 875-76.  The *Cassiagnol* defendants "allege[d] that the broad grant of

12 authority to GSA exceeds the permissible right of Congress to delegate its own authority."

13 *Cassiagnol*, 420 F.2d at 876.  The *Cassiagnol* court found that the statute limited GSA's authority

---

14

15 [4]     Defendant also submits that 43 U.S.C. § 1733(a) violates the principle that "only the
people's elected representatives in Congress have the power to write new federal criminal laws."
Docket No. 12 at 3-4. (quoting *Valenzuela Gallardo v. Barr*, 968 F.3d 1053, 1059-60 (9th Cir.
16 2020)). *Valenzuela Gallardo* addressed whether the Board of Immigration Appeals' interpretation
of a statute is entitled to *Chevron* deference and how *Chevron* deference interacts with other
17 aspects of criminal law. *Valenzuela Gallardo*, 968 F.3d at 1059.  Defendant briefly discusses
*Valenzuela Gallardo* before concluding that "[i]f the Ninth Circuit has concerns over the executive
18 branch providing interpretations of a statute, than the executive branch creating criminal statutes
can only increase the constitutional problems present here."  Docket No. 12 at 3-4.  The United
19 States did not respond to this portion of Defendant's brief. *See generally* Docket No. 8.

20     The Supreme Court has examined whether a statute making violation of regulations a
criminal offense violates the separation of powers. *See United States v. Grimaud*, 220 U.S. 506
21 (1911).  More recently, the Supreme Court seemingly assumed that Congress could properly
authorize the Executive Branch to promulgate regulations that contemplate criminal sanctions. *Cf.*
22 *Touby*, 500 U.S. at 165-66 (declining to address whether "regulations that contemplate criminal
sanctions" promulgated under a statutory delegation of authority require "more specific guidance"
23 than an intelligible principle because the challenged statute "passe[d] muster even if greater
congressional specificity is required in the criminal context").  Defendant does briefly analyze how
24 *Grimaud* would affect the separation of powers question.  His analysis, however, consists primarily
of the conclusory statement that "[*United States v. Davis*, 139 S. Ct. 2319 (2019)] would abrogate
25 any prior ruling holding the legislature does not have a monopoly over making acts criminal,
including *Grimaud*."  Docket No. 14 at 5.  *Davis* addressed whether the residual clause of a
26 congressionally drafted criminal statute was unconstitutionally vague. *Davis*, 139 S.C.t at 2323-
24.  Defendant at no point clarifies how cases focusing on *Chevron* deference and constitutional
27 vagueness inform whether a statute violates the separation of powers.  The Court need not address
undeveloped arguments. *See, e.g.*, *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D.
28 Nev. 2013).

to "establish regulations only as to government property under its charge and control." *Id.* Similarly, the *Cassiagnol* court noted that the general policy GSA was to pursue was to promulgate "'needful rules and regulations' to maintain and protect such property and ensure its use for the authorized purpose." *Id.* (quoting 40 U.S.C. § 318a). It concluded that such a broad grant of authority was appropriate because of the "wide variety" of buildings under GSA control. *Id.* Accordingly, the *Cassiagnol* court found "40 U.S.C. § 318 to be a constitutional delegation of administrative authority to the Administrator of GSA." *Id.* at 377.

Defendant attacks the United States' reliance on *Cassiagnol* on several grounds. Defendant first submits that *Cassiagnol* lacks persuasive value because it fails to address the "Supreme Court's unequivocal[] declaration [that] 'only the people's elected representatives in the legislature are authorized to make an act a crime.'" Docket No. 14 at 5 (quoting *Davis*, 139 S. Ct. at 2325). This submission is a variant of Defendant's separation of powers argument discussed above. The Court declines to address this argument for the reasons previously stated.

Defendant further submits that *Cassiagnol* is of little persuasive value because "it did not have an opportunity to consider the more recent denouncements and abrogations of the nondelegation clause." Docket No. 14 at 5. Defendant is correct that *Cassiagnol* predates much of the Supreme Court's nondelegation jurisprudence. The Fourth Circuit, however, has recently found *Cassiagnol's* reasoning decisive in a nondelegation challenge.

In *United States v. Moriello*, 980 F.3d 924 (4th Cir. 2020), the Fourth Circuit considered whether 40 U.S.C. § 1315, the modern successor to the statute at issue in *Cassiagnol*, violated the nondelegation doctrine.[5] *Moriello* reaffirmed *Cassiagnol's* conclusion that "it is reasonable and constitutional to delegate to the agency charged with maintenance and protection of government property the right to fix minimum acceptable conduct thereon." *Moriello*, 980 F.3d at 932 (quoting *Cassiagnol*, 420 F.2d at 876-77). Indeed, the *Moriello* court concluded that 40 U.S.C. § 1315 provided a narrower delegation of authority than 40 U.S.C. § 318a. *Id.* at 933. This is because the

---

[5]    40 U.S.C. § 1315(c)(1) states that "[t]he Secretary [of Homeland Security], in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property."

1  former "delegated the authority to 'make *all needful rules and regulations* for government of the

2  property'" under GSA control whereas the latter "specifies that the rules must be '*for the protection*

3  *and administration of property* owned or occupied by the Federal Government.'"  *Id.* (quoting 40

4  U.S.C. §§ 318a (2002), 1315(c)) (emphasis added).  *Cassiagnol*, therefore, is still persuasive law.

5       Defendant further submits that *Cassiagnol's* reasoning regarding the limitation of

6  delegated authority fails when applied to the Bureau of Land Management ("BLM") because it

7  manages significantly more property than the GSA.  Docket No. 14 at 5-6.  Defendant fails to

8  explain, however, how the government's interest in administering its property is substantively

9  changed by the amount of property at issue.  Indeed, given that the BLM manages such a wide

10  variety of property relative to the GSA, the logic of *Cassiagnol* suggests that Congress could

11  delegate even more discretion to the BLM than to the GSA.[6]  *Cf. Cassiagnol*, 420 F.2d at 876.

12       The Court finds the reasoning from *Cassiagnol* and *Moriello* persuasive.  43 U.S.C. §

13  1733(a) directs that "[t]he Secretary [of the Interior] shall issue regulations necessary to implement

14  the provisions of this Act with respect to the management, use, and protection of the public lands,

15  including the property located thereon."  Much like the statute at issue in *Moriello*, § 1733(a)

16  requires regulations be for "the management, use, and protection of the public lands."  The

17  Secretary's regulatory authority is further narrowed by Congressional declarations regarding the

18  promulgation of regulations and the policy and management objectives those regulations should

19  pursue.  *See* 43 U.S.C. §§ 1701(5), (8), (12).[7]  Additionally, § 1733(a) limits the Secretary's

20

21  [6]    Defendant's final submission as to why *Cassiagnol* and *Kittel* are unpersuasive is, at
     bottom, an argument that the relevant statutes lacked an intelligible principle.  *See* Docket No. 14
22  at 6-7.  *Compare id. with* Docket No. 12 at 7.  The Court declines to re-adjudicate those cases here.

23  [7]    43 U.S.C. § 1701(5) states that, "in administering public land statutes and exercising
     discretionary authority granted by them, the Secretary be required to establish comprehensive rules
24  and regulations after considering the views of the general public; and to structure adjudication
     procedures to assure adequate third party participation, objective administrative review of initial
25  decisions, and expeditious decisionmaking."

26       43 U.S.C. § 1701(8) directs that

27       "the public lands be managed in a manner that will protect the quality of scientific,
        scenic, historical, ecological, environmental, air and atmospheric, water resource,
28       and archeological values; that, where appropriate, will preserve and protect certain
        public lands in their natural condition; that will provide food and habitat for fish

1 | authority to the statutorily defined "public lands." *See* 43 U.S.C. § 1702(e).[8] Considering the

2 | reasoning in *Cassiagnol* and *Moriello*, and because "Congress has made clear to the delegee the

3 | 'general policy' [s]he must pursue and the 'boundaries of [her] authority," *Melgar-Diaz*, 2 F.4th

4 | at 1267 (internal citation omitted), the Court finds that 43 U.S.C. § 1733(a) is not an

5 | unconstitutional delegation of legislative power.

6 | **IV.    CONCLUSION**

7 | For the reasons more fully discussed above, Defendant's motion to dismiss for violation of

8 | nondelegation doctrine is **DENIED** in part and **DENIED** without prejudice in part.  Docket No.

9 | 12.   Defendant's nondelegation challenge is **DENIED**.   Defendant's separation of powers

10 | challenge is **DENIED** without prejudice.   Any renewed motion raising a separation of powers

11 | argument must be submitted no later than February 23, 2023.

12 | IT IS SO ORDERED.

13 | Dated: February 16, 2023

14 | 

15 | Nancy J. Koppe
United States Magistrate Judge

16 | 

17 | 

18 | 

19 | 

20 | 

21 | 

---

22 | and wildlife and domestic animals; and that will provide for outdoor recreation and human occupancy and use."

23 | 

24 | 43 U.S.C. § 1701(12) requires that "the public lands be managed in a manner which recognizes the Nation's need for domestic sources of minerals, food, timber, and fiber from the public lands including implementation of the Mining and Minerals Policy Act of 1970 … as it

25 | pertains to the public lands."

26 | [8]     "The term 'public lands' means any land and interest in land owned by the United States within the several States and administered by the Secretary of the Interior through the Bureau of

27 | Land Management, without regard to how the United States acquired ownership, except (1) lands located on the Outer Continental Shelf; and (2) lands held for the benefit of Indians, Aleuts, and

28 | Eskimos." 43 U.S.C. § 1702(e).

6